**William R. WASHLEFSKE, Plaintiff,**

v.

**Andrew J. WINSTON, Individually, and in his official capacity as Chairman of the Board of Corrections, and, Ronald Angelone, Individually, and in his official capacity as Director of Virginia Department of Corrections, Defendants.**

**No. 2:98CV1466.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 13, 1999.

William F. Washlefske, State Farm, VA, pro se.

Mark R. Davis, Senior Assistant Attorney General, Criminal Law Division, Office of the Attorney General, Richmond, VA, for defendants.

## OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

Plaintiff, William R. Washlefske, a Virginia inmate, brings this *pro se* action pursuant to 42 U.S.C. § 1983, to redress alleged violations of his constitutional rights. Plaintiff claims that defendants violated his rights under the Fifth and Fourteenth Amendments by taking his property without just compensation. Specifically, Washlefske alleges that defendants, acting pursuant to Virginia Code § 53.1–44, unconstitutionally retained the interest accrued on his "hold" and "spend" accounts, both of which are part of an Inmate Trust Fund administered by the Virginia Department of Corrections ("VDOC"). Defendants have moved for summary judgment, and plaintiff has filed a cross-motion for summary judgment. For the reasons stated below, defendants' motion for summary judgment is hereby **GRANTED** and plaintiff's cross-motion for summary judgment is **DENIED**.

### I. Procedural History

Plaintiff's initial complaint in this case was conditionally filed on December 18, 1998, in the Western District of Virginia and was thereafter transferred to this court. After plaintiff qualified to proceed *in forma pauperis,* the court ordered plaintiff's complaint filed and served on defendants. On March 24, 1999, before defendants filed a responsive pleading, plaintiff sought and was given permission by the court to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a). On May 17, 1999, defendants filed a motion for summary judgment and a memorandum and affidavits in support thereof.

In accordance with *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975), plaintiff was given an opportunity to respond to defendants' motion with any material that he wished to offer in rebuttal. The notice also instructed plaintiff that failure to submit any materials could result in an adverse judgment based on defendants' motion and accompanying affidavits. Plaintiff responded to the motion for summary judgment on June 4, 1999, and filed a cross-motion for summary judgment. Accordingly, the motions are now ripe for determination.

### II. Facts

Section 53.1–44 of the Virginia Code provides the statutory authority for the investment of prisoner funds held by the Director of the Virginia Department of Corrections, and governs the use of interest generated from such investment:

Portions of the funds held by the Director or by any state correctional facility, which belong to prisoners may, in the discretion of the Director, be invested in bonds of the Commonwealth of Virginia or of the United States or in federally-insured investments. In determining how to invest the funds, the Director shall balance any long-term investments with those which permit ready accessibility to the funds. Any income or increment of increase received from the bonds or investments may be used by the Director for the benefit of the prisoners under his care.

Va.Code.Ann. § 53.1–44 (Michie 1998). According to plaintiff's amended complaint and the affidavits submitted by defendants,[1] the Inmate Trust Fund Account

---

1. The pertinent facts in this case are undisputed. Defendants submitted the affidavits of G.M. Johnson, Deputy Director of Division of Operations at the Virginia Department of Corrections, and W.G. Clark, an accountant at Powhatan Correctional Center. The affidavits submitted by defendants substantially confirm the factual allegations contained in plaintiff's amended complaint.

held and administered by the Director contains funds from two types of prisoner accounts, a "hold" account and a "spend" account.

Virginia inmates receive compensation for the labor they perform while incarcerated. *See* Va.Code.Ann. §§ 53.1–42 and 53.1–43. The payments are to "accumulate and be paid over to the prisoner upon discharge, except that an amount thereof to be determined by the Board may be drawn upon by the prisoner for such purposes as may be authorized by the regulations of the Board [of Corrections]." Va. Code.Ann. § 53.1–42. When a prisoner who has served at least eight months is released from incarceration, the Director is charged with ensuring that the individual is given all of the accumulated funds in his account and, in any event, is to be given a minimum discharge allowance of twenty-five dollars. *See* Va.Code.Ann. § 53.1–190. To implement these statutes, the Virginia Board of Corrections established Board Policy 20–7, "Inmate Pay," which specifies that ten percent of an inmate's gross pay shall be withheld until twenty-five dollars is accumulated. The money is placed into a "hold" account until the full twenty-five dollars is accumulated, after which the twenty-five dollars continues to be held until the inmate is discharged or paroled. This procedure ensures that each prisoner has at least the statutorily allowed discharge amount of twenty-five dollars available at the time of his release. Washlefske's "hold" account contains the full twenty-five dollars, and no further money has been withheld from his prison pay. (Clark Aff. ¶ 15.)

The remaining prison pay earned by the inmate is placed into a "spend" account. The inmate may also deposit money received from outside sources, such as family and friends, into this account. The money contained in the "spend" account is then available for the inmate to purchase items from the prison commissary, purchase goods from approved sources outside the prison system, or send to individuals or entities designated by the inmate. As of May 13, 1999, Washlefske's "spend" account contained sixty-one dollars and seventy-seven cents ($61.77). *Id.* On average, $108.76 is deposited in Washlefske's "spend" account each month, and his average monthly closing balance is sixty-seven dollars and five cents ($67.05). *Id.*

Further, as of February 28, 1999, all VDOC inmates may have a checking and/or savings account at a financial institution. The outside accounts must be managed by an outside party on the inmate's behalf. The outside manager is selected by the inmate and there is no restriction on who the inmate may choose as his outside manager. There is no indication in the record that Washlefske has chosen to place funds in accounts other than those maintained by the correctional system.

The money in the Inmate Trust Fund Account is handled in two ways. First, sufficient funds are kept on hand to handle short-term expenses related to the day-to-day purchase of items from the prison commissary. These funds are kept in an interest bearing checking account. Second, the inmate funds that exceed the immediate need for working-capital are invested in a Local Government Investment Pool ("LGIP"). The funds from all VDOC institutions are pooled together in the LGIP. Each VDOC correctional institution receives interest from the LGIP twice a year based on the proportion of funds the institution has on deposit in the LGIP. When the interest is distributed, each institution deposits the money in the local Commissary Account, where it is then used to purchase items such as library books, newspaper and magazine subscriptions, exercise equipment, items for family visiting days, and other collectively used "extras." These items are then available for use by all the institution's inmates. Powhatan Correctional Center, where plaintiff is incarcerated, earned $5,479.45 in 1998 from the LGIP. The average monthly interest earned on the interest-bearing checking account is fifty-nine dollars and eighty-six cents ($59.86).

Because it would involve significant administrative costs, VDOC does not account to each inmate for the interest earned on the inmate's portion of the Inmate Trust Fund. Instead, as permitted by Va.Code. Ann. § 53.1–44, the interest is used for the benefit of all inmates. VDOC imposes no administrative fee to hold and process the money contained in the Inmate Trust Fund Account, or to withdraw or deposit funds in the Inmate Trust Fund Account, even though such expenses appear to be considerable. At Powhatan Correctional Center alone, four individuals, an accountant, a cashier, a payroll clerk, and a fiscal technician, are employed exclusively to manage inmate accounting, including inmate payroll and accounting for individual inmate "hold" and "spend" accounts.

### III. Analysis

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions v. Burlington Indus.,* 763 F.2d 604, 610 (4th Cir.1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *See Celotex Corp.,* 477 U.S. at 322–24, 106 S.Ct. 2548. Such facts must be presented in the form of exhibits and sworn affidavits. Failure by plaintiff to rebut defendants' motion with such evidence on his behalf will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548.

Plaintiff claims that, in enforcing the VDOC policies and procedures promulgated pursuant to section 53.1–44 of the Virginia Code, defendants took his property without just compensation in violation of the Fifth Amendment, as applied to the states through the Fourteenth Amendment. In support of his claim, plaintiff relies on *Phillips v. Washington Legal Foundation,* 524 U.S. 156, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998), in which the Supreme Court held that the interest generated by funds held in Interest On Lawyers Trust Accounts ("IOLTA") is the private property of the owner of the principal for purposes of the Takings Clause and remanded the case for determination of whether the property at issue had been taken by the state, and, if so, the amount of "just compensation." *See id.* at 1934. Plaintiff also relies heavily on *Schneider v. California Dep't of Corrections,* 151 F.3d 1194 (9th Cir.1998), which held, relying in turn on *Phillips,* that California inmates possess a property interest in the interest generated by inmate funds held in Inmate Trust Accounts by the California Department of Corrections. *See id.* at 1201. As in *Phillips,* the Ninth Circuit also remanded for consideration of the takings and compensation issues. *See id.* Plaintiff argues that because he has a constitutionally protected property interest in the interest generated by his personal funds held by VDOC in the Inmate Trust Fund Account, the defendants are taking his property without just compensation by not distributing the interest to him. Plaintiff seeks a declaratory judgment that defendants are violating his constitutional rights by denying him the interest earned on his inmate accounts, an injunction ordering defendants to pay the accrued and compounded interest earned on plaintiff's "hold" and "spend" accounts from the date of his incarceration in 1992, and an injunction granting plaintiff all future interest earned on his "hold" and "spend" accounts.

Defendants first argue that, to the extent plaintiff is seeking an award of monetary damages, they are entitled to qualified good faith immunity, and that, in any event, Washlefske is not entitled to a retroactive award of monetary damages.[2] *See Ex parte Young,* 209 U.S. 123, 158, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Defendants then argue that there is no need for this court to conduct a Takings Clause analysis because, as a matter of state law, inmates have no protected property interest in the amounts earned on their share of the Inmate Trust Fund Accounts. They argue that, apparently unlike the clients in *Phillips,* the "interest follows principal" rule announced in that case does not apply to inmates because, historically, inmates had no property rights under the common law. Because they claim that the Ninth Circuit overlooked this crucial contextual aspect of the *Schneider* case, defendants urge this court to find that plaintiff, and consequently other inmates, do not have a property interest in the interest generated by the Inmate Trust Account Fund. Finally, defendants argue that even if Washlefske has such a protected property interest, the court should not apply a *per se* rule that the failure to distribute the earnings to plaintiff amounts to a taking without just compensation.

■ The final clause of the Fifth Amendment to the United States Constitution states "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The "Takings Clause," as it is known, was originally applicable only against the federal government, but was incorporated for use against the states through the Due Process Clause of the Fourteenth Amendment. *See, e.g., Chicago, Burlington & Quincy R.R. Co. v. City of Chicago,* 166 U.S. 226, 239, 17 S.Ct. 581, 41 L.Ed. 979 (1897). However, the Takings Clause is not implicated unless there is a demonstra-

tion that the plaintiff possesses a constitutionally protected property interest. *See Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 125, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). Only after plaintiff carries his burden on the first element does the court then proceed to the question of whether the use or expropriation of that property interest constitutes a "taking" under the Fifth Amendment. These questions are addressed in turn below.

### A. Plaintiff Has A Property Interest in the Interest Earned on the Inmate Trust Fund Account

■ Given the clear guidance provided by the Supreme Court in *Phillips,* this court holds that Washlefske has a property interest in the income interest generated by his proportional share of the Inmate Trust Fund Account. In *Phillips,* the Supreme Court stated that "[t]he rule that 'interest follows principal' has been established under English common law since at least the mid–1700's," and that the rule "has become firmly embedded in the common law of the various states." 118 S.Ct. at 1930. The Court relied on this "general rule" to hold that the interest generated from IOLTA's was the private property of the owners of the principal. In so holding, the Court stated that, in *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 162, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980), it had previously rejected the argument that there was no private property interest in the income earned by funds when a state actor's "authority to invest deposited funds was a statutorily created right." *Phillips,* 118 S.Ct. at 1933.

Here, the defendants do not attempt to argue that the "interest follows principal" rule is not an integral part of the common law of Virginia. Instead, defendants correctly state that Virginia law gives defendant Angelone, as Director of VDOC, com-

---

**2.** Citing *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), plaintiff vigorously disputes defendants argument that he would not be entitled to an injunction ordering a retroactive award

of interest. Because the court grants summary judgment in favor of defendants, there is no need to reach the question of what relief is available to plaintiff.

plete discretion to decide whether the funds are invested in such a way as to earn money. They then argue that the court should find, as a result, that the Virginia statutory scheme was specifically designed to negate any inference that inmates had a property interest in the possible earnings of the funds held by the Director. In effect, defendants are arguing that plaintiff would not be entitled to any interest without the authority being given to defendant Angelone to take the inmate account funds and invest them in such a way as to earn interest. However, the Supreme Court has twice rejected this "government-created value" theory. See *Phillips*, 118 S.Ct. at 1933; *Webb's Fabulous Pharmacies*, 449 U.S. at 163, 101 S.Ct. 446.

When presented with a similar situation, the Ninth Circuit in *Schneider* held that California's analogous statutory scheme "appear[ed] to deny the existence of [a property interest in the inmates]." 151 F.3d at 1199. The Ninth Circuit then further held that *Webb's Fabulous Pharmacies* and *Phillips* demonstrate "constitutionally protected property rights can— and often do—exist *despite* statutes ... that appear to deny their existence." *Id.* (emphasis in original) The Ninth Circuit observed there was a critical similarity between *Schneider* and the two Supreme Court cases, because "[i]n both cases, the Court relied, in the face of a contrary state statute, upon the traditional common law rule that 'interest follows principal' in recognizing a protected property interest in earned interest income." *Id.* at 1200.

In urging this court not to follow *Schneider*, defendants argue there is a critical distinction between the two Supreme Court cases and the situation confronting the Ninth Circuit in *Schneider* and this court in the instant case. Defendants claim that the fact plaintiff seeks to have the "interest follows principal" rule applied in the prison context is a significant distinction from *Webb's Fabulous Pharmacies*, 449 U.S. at 162, 101 S.Ct. 446 (holding that interpleader funds deposited with court clerk are subject to "interest follows principal" rule), and *Phillips*, 118

S.Ct. at 1933 (holding that client funds deposited in small amount and/or for small periods of time in IOLTA are subject to "interest follows principal" rule), and one that was overlooked by the Ninth Circuit. Defendants claim that application of the "interest follows principal" rule in the prison context does not have a mooring in the common law, and, as such, plaintiff does not have a property interest in the income generated from the funds held by the Director, unless the state has statutorily created such a property interest.

Although defendants claim a long-standing common law pedigree for the argument they would have this court adopt, the only case they cite in support is *Ruffin v. Commonwealth*, 62 Va. (21 Gratt.) 790, 796 (1871), in which the Virginia Supreme Court, in dicta, stated that inmates are the "slaves of the State." Yet, while such a statement may say a great deal about an inmate's loss of his liberty interest, see *id.* at 796, it says nothing at all about an inmate's loss of his property interest while incarcerated. Moreover, to the extent that it was ever an accurate statement, the idea expressed by the court in *Ruffin*, that inmates are no more than "slaves of the State," has been repeatedly and expressly repudiated by other courts. See *McCann v. Coughlin*, 698 F.2d 112, 115 (2d Cir. 1983) (stating that courts and public officials have long rejected the doctrine represented by *Ruffin*); *Sostre v. Preiser*, 519 F.2d 763, 764 (2d Cir.1975) (stating that the time when prison inmates had no rights, citing *Ruffin*, is past); *Morales v. Schmidt*, 489 F.2d 1335, 1338 n. 2 (7th Cir.1973) (" 'our enlightened concern for individual human rights as it has penetrated prison compounds has taken us a long way from the judicial attitudes of the past as illustrated by ... *Ruffin v. Commonwealth.*' ") (quoting *Palmigiano v. Travisono*, 317 F.Supp. 776, 785 (D.R.I.1970)); *Coffin v. Reichard*, 143 F.2d 443, 445 (6th Cir.1944) ("A prisoner retains all the rights of an ordinary citizen except those expressly, or by necessary implication, taken from him by law."); *see also Wolff v.*

*McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("There is no iron curtain between the Constitution and the prisons of this country.").

In addition, defendants' argument is severely undermined by their own evidence. There is no clearer evidence of the change in attitudes concerning prisoner rights than the fact that the Commonwealth of Virginia now pays prisoners for their labor instead of itself reaping the benefit of the inmates' labor by hiring them out to companies beyond the prison walls. *Compare* Va.Code Ann. § 53.1–42 *with Ruffin,* 62 Va. (21 Gratt.) at 790 (involving prisoner who killed guard of independent contractor who hired convicts from state). Specifically, the Commonwealth of Virginia itself acknowledges that the inmates are the owners of the funds held by the Director and used to generate interest. Section 53.1–44 of the Virginia Code acknowledges that the Director holds funds "which *belong* to prisoners." Va.Code Ann. § 53.1–44 (emphasis added). Yet, defendants now come before this court and attempt to argue that plaintiff does not have a property interest in the natural incidents and appurtenances of the property that the Commonwealth of Virginia not only acknowledges that the plaintiff owns, but also provides to the plaintiff in the form of wages. Such an argument is plainly in conflict with the Supreme Court's reasoning in *Phillips* that "possession, control, and disposition [of interest income] are ... valuable rights that inhere in the property," even if the interest earned has "no economically realizable value to its owner." 118 S.Ct. at 1933.

Finally, defendants' argument that the "interest follows principal" rule should not be applied in the prison context is most severely undercut by the fact that Virginia does, in fact, permit inmates to own financial accounts outside the prison walls at financial institutions where they can earn interest. This option became available to Virginia inmates earlier this year, on February 28, 1999. (Clarke Aff. ¶ 4.) It is plainly inconsistent to permit an inmate to own an account generating interest income in which the inmate undisputedly has a property interest, but then deny that he has a property interest in the income generated by the same principal funds, if those funds are transferred by the plaintiff from his outside account to his "spend" account. By their own actions in promulgating and implementing the VDOC policy permitting outside accounts, defendants specifically acknowledge that the "interest follows principal" rule does apply in the prison context in Virginia, despite their argument to the contrary.[3]

Because the court finds that the rule of law stated in *Phillips* controls in this case, and likewise finds the Ninth Circuit's opinion in *Schneider* persuasive, the court holds that plaintiff has a property interest in the interest income generated from funds belonging to him that are held and invested by the VDOC Director in the Inmate Trust Fund Account pursuant to § 53.1–44 of the Virginia Code.

Contrary to plaintiff's apparent belief, the finding of a property interest does not end the Takings Clause analysis. Because the court finds as a matter of law that plaintiff has a property interest at issue in this case, the court must then proceed to determine if plaintiff's property was "taken for public use, without just compensation." U.S. Const. amend. V.

3. Defendants also claim that plaintiff has no property interest in the interest income because an "inmate's property rights, with respect to property held in prison, is solely determined by the Director of the VDOC. *See* Va.Code § 53.1–26; *see also Hanvey v. Blankenship,* 474 F.Supp. 1349 (W.D.Va.1979), *aff'd,* 631 F.2d 296 (4th Cir.1980)." (Defs.' Memo.Supp.Summ.J. ¶ 22.) However, even if true, such an argument is not relevant to the issue in this case. The property at issue here is not in the possession of the inmate in prison, but is, instead, generated by the investment of funds owned by the inmate and "held by the Director." Va.Code Ann. § 53.1–44. The relevant argument in this case is what degree of control the Director has over the property of an inmate that is not held in prison.

*B. Plaintiff's Property Was Not Taken For Public Use, Without Just Compensation*

■ The examination of any particular case under the Takings Clause occurs on a case-by-case basis. *See Penn ·Central Transp. Co.*, 438 U.S. at 124, 98 S.Ct. 2646. Once a property interest has been found, the Supreme Court analyzes the second prong of most takings claims using the following three factors: (1) the economic impact on the plaintiff;. (2) the extent to which plaintiff's investment-backed expectations are interfered with; and (3) "the character of the government action." *Id.; see Esposito v. South Carolina Coastal Council*, 939 F.2d 165, 169–70 (4th Cir. 1991). There is one exception to the use of this multi-factor balancing test. The Supreme Court has applied a *per se* rule in cases where there has been a permanent physical occupation of property. *See, e.g., Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426–27, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982).[4]

■ Because the present case does not involve tangible personal or real property, but involves a fungible item, such as money, the court will apply the *Penn Central* multi-factor balancing test. *See United States v. Sperry Corp.*, 493 U.S. 52, 62 n. 9, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989); *see also Nixon v. United States*, 978 F.2d 1269, 1285 (D.C.Cir.1992) (citing *Sperry* for the proposition that money "is not subject to the *per se* doctrine because it is fungible"); *Washington Legal Found. v. Massachusetts Bar Found.*, 993 F.2d 962, 975–76 (1st Cir.1993) (applying multi-factor balancing test to interest earned on IOLTAs).

*1. Character of the Government Action*

To succeed on his Takings Clause claim in the context of this § 1983 action, plaintiff must demonstrate that the character of the action taken pursuant to state law by defendants in this case constituted a taking of his property for public use. However, plaintiff has failed to demonstrate that the state actors used the earned interest income for "public use."

In his briefs to the court, plaintiff relies heavily on the Supreme Court's decision in *Phillips*, 118 S.Ct. at 1925, dealing with interest income generated by IOLTAs. Because *Phillips* was remanded to the lower courts for analysis of the second prong of the Takings Clause analysis, *Phillips* does not provide guidance for this portion of the court's opinion, nor support for the arguments made by plaintiff on this point. Moreover, even if plaintiff is correct that the facts presented in *Phillips* constitute a violation of the Takings Clause, plaintiff overlooks a fundamental difference between the facts of *Phillips* and those present in this case. In *Phillips*, the interest earned on the IOLTAs was used for the benefit of third parties, and not for the benefit of the clients whose funds were in the IOLTAs. *See Phillips*, 118 S.Ct. at 1929. The interest from the IOLTAs was paid to a nonprofit foundation established by the Supreme Court of Texas. The foundation then distributed the money to other nonprofit organizations that were in the business of providing legal services to low-income or indigent individuals. *See id.* In the present case, however, the earned interest income is being used specifically for the benefit of the inmates whose funds are in the Inmate Trust Fund Account, including the plaintiff in this case.

Section 53.1–44 of the Virginia Code authorizes defendant Angelone, as Director of VDOC, to use the interest earned on the Inmate Trust Fund Account "for

---

4. This kind of taking has been referred to as a "paradigmatic taking" because it is "the one thing the fifth amendment meant to prohibit." Peter M. Siegel, *Interest On Lawyers' Trust Account Programs: Do They "Take" "Property" of the Client*, 36 U.Fla.L.Rev. 674, 746 (1984). Siegel argues that separating the in-

terest from the principal does not result in the permanent physical occupation of property, and claims that *Webb's Fabulous Pharmacies*, 449 U.S. at 162, 101 S.Ct. 446 did not apply the *per se* rule in. a case involving earned interest on a principal fund. *See id.*

the benefit of the prisoners under his care." The undisputed evidence before the court is that the interest earned by inmate funds in the Local Government Investment Pool is returned to the various penal institutions in amounts proportional to the institution's inmate funds held in the pool. The record reflects that these funds are then placed in the institution's commissary fund. The institution then uses those common funds to purchase items that benefit all of the prisoners in the institution: library books, newspaper and magazine subscriptions, recreational equipment, and items for family visiting days. Thus, the character of the actions taken by defendants pursuant to state law is not designed to permanently deprive plaintiff and the other inmates of their property interest in the earned interest income. Instead, the program established by the Commonwealth of Virginia is clearly designed to use the collective earned interest to maximum effect and benefit for those incarcerated. It does so by pooling the inmates' funds into an account with an amount sufficient to earn interest, which earned interest income is then returned to the inmates in the form of items purchased for their use.

Also bolstering the court's conclusion that the actions of defendants in this case do not constitute a taking of plaintiff's property is the fact that plaintiff has chosen to place his funds in the accounts administered by VDOC. At least as of February 28, 1999, if not before, plaintiff could choose to place his funds, whether earned in prison or given to him by a relative or friend, in interest-bearing accounts outside the penal institution. Thus, by deciding that he wishes to keep a certain amount of funds available for use in the prison commissary, plaintiff is voluntarily choosing to place funds in the accounts administered by the prison and not in an account outside the institution. Therefore, the court finds that plaintiff has failed to demonstrate that the appropriation of the interest in this case was against his will. *See Yee v. City of Escondido*, 503 U.S. 519, 527, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992); *Washington Legal Found. v. Texas Equal Access to Justice Found.*, 94 F.3d 996, 1004 (5th Cir.1996), *aff'd sub nom. Phillips v. Washington Legal Found.*, 524 U.S. 156, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998).

### 2. Economic Effects

Plaintiff has also failed to demonstrate that the challenged actions in this case have adverse economic consequences for him. In fact, the record clearly demonstrates that plaintiff, and the other Virginia inmates in VDOC, receive substantial benefits as a result of the operation of the Inmate Trust Fund Account. Thus, the court finds that, even if the defendants take plaintiff's property for a public use pursuant to state law, plaintiff receives just compensation for that taking in the form of benefits that are available for his use, as well as the use of all VDOC inmates.

The evidence before the court indicates that the Commonwealth of Virginia has specifically chosen to forego the collection of administrative fees for handling the inmate "hold" and "spend" accounts. In *Phillips,* the Supreme Court stated

> This would be a different case if the interest income generated by IOLTA accounts was transferred to the State as payment "for services rendered" by the state. Our holding does not prohibit a State from imposing reasonable fees it incurs in generating and allocating interest income. But here the State does not, indeed cannot, argue that its confiscation of respondents' interest income amounts to a fee for services performed.... funds held in IOLTA accounts are managed entirely by banks and private attorneys.

*Phillips,* 118 S.Ct. at 1933 (citations omitted). Defendants rely on this passage to argue that the state action does not constitute a takings in this case, despite the fact that plaintiff has a property interest in the earned interest. The record clearly establishes that Virginia incurs substantial ex-

penses in the operation of the inmate accounts, thereby allowing the inmates to purchase items from the prison commissary that they would not be able to otherwise obtain. At Powhatan Correctional Center alone, where plaintiff is incarcerated, four employees are totally devoted to organizing, accounting, and record keeping for inmate accounts.

Plaintiff attempts to make much of the administrative expenses detailed in the affidavits submitted by defendants, pointing out that at other points in the affidavits Johnson and Clark state that no administrative fees are charged for administering the inmate accounts. Plaintiff, however, completely misapprehends the import of these facts. It is clear to the court that, although the Commonwealth of Virginia incurs substantial administrative fees in connection with the inmate accounts, the state chooses not to charge the inmates fees for administering and maintaining these accounts, as it clearly may do under the authority of *Phillips*. Not only does Virginia choose not to appropriate the minuscule amount of interest earned by plaintiff's funds as a fee for administering his account, but it also returns the collective interest to the prisoners in the form of books, magazines, recreation equipment, and so forth. Thus, Virginia confers a double benefit on the prisoners by first not charging them administrative or service fees, but then by returning the interest, which could have been taken as fees, to the prisoners in the form of benefits.

Because the court finds that inmates are not being charged administrative fees for maintaining inmate accounts, and that the interest earned on the Inmate Trust Fund Account is used to directly benefit VDOC inmates, including plaintiff, and not other, third party beneficiaries, the court finds that plaintiff has been justly compensated for any taking of his property. Accordingly, the court finds there is no violation of the Takings Clause in this case.

## IV. Conclusion

Although plaintiff has a property interest in the interest income earned on his portion of the funds in the Inmate Trust Fund Account, the court finds that the actions of the defendants taken pursuant to state law do not result in a taking of plaintiff's property for public use without just compensation. Plaintiff voluntarily chooses to place funds in the accounts administered by the prison. Moreover, even if the challenged actions are deemed to be a taking for public use, the court finds that plaintiff and the other VDOC inmates receive just compensation for that taking. They are compensated first in the form of benefits, such as library books, recreation equipment, and other extras that would not otherwise be available for their use, and second in not paying any administrative fees to the state for administering and maintaining their inmate accounts. Defendants are entitled to judgment as a matter of law, and their motion for summary judgment is hereby **GRANTED,** and plaintiff's cross-motion for summary judgment is **DENIED.**

Plaintiff is advised that he may appeal from this Opinion and Final order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this opinion and Final Order.

IT IS SO **ORDERED.**