Paul John SCHNEIDER, et al., Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF CORRECTIONS, et al., Defendants.

No. C–96–1739 SI.

United States District Court, N.D. California.

March 24, 1997.

Herman A. D. Franck, V, Stephen T. Gargaro, Franck & Associates, San Francisco, CA, for Plaintiffs.

Daniel E. Lungren, Atty. Gen. of the State of California, Peter J. Siggins, Sr. Asst. Atty. Gen., Bruce M. Slavin, Allen R. Crown, Deputy Attys. Gen., San Francisco, CA, for Defendants California Dept. of Corrections and Director Gomez.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

ILLSTON, District Judge.

On March 14, 1997, the Court heard argument on defendants' motion to dismiss. Having considered the arguments of counsel and the papers submitted, the Court hereby grants defendants' motion to dismiss without leave to amend.

## BACKGROUND

Plaintiffs are current and former state inmates of Pelican Bay State Prison, California Correctional Institution, and the Central California Women's Facility. The inmates allege that defendants California Department of Corrections ("CDC") and James Gomez, Director of the CDC, have violated the Fifth Amendment Takings Clause by failing to pay interest on funds deposited by prisoners in Inmate Trust Accounts ("ITAs").

For security reasons, prisoners are not permitted to possess money while they are in prison. 15 C.C.R. § 3006(b). For funds to which prisoners wish to have access while incarcerated,[1] inmates can choose to place their money in either an ITA, which does not pay interest to the prisoner, or in a Passbook Savings Account which does pay interest.[2] In order to have a Passbook Savings Account, inmates are required to maintain a balance of $25.00 in an ITA.[3] Only those funds placed in an ITA are available to in-

---

1. Inmates retain the option of placing their funds outside the California Department of Corrections system with family, friends, institutional trustees, etc.

2. The Passbook Savings Account program was implemented in response to the California Court of Appeal decision in *In re Parker,* 151 Cal. App.3d 583, 198 Cal.Rptr. 796 (1984). Because of a growing problem in the trafficking and use of narcotics and other contraband in prison, in 1981 California prison inmates were prohibited by regulation from establishing passbook savings accounts with outside banks, and were restricted to "long term investments" for their funds. The California court found that less restrictive alternatives were available to the prison authorities to afford protection against the narcotics and contraband threat, and this passbook savings program was developed as a result.

3. At oral argument plaintiffs complained that the CDC failed to inform inmates of their options concerning the Passbook Savings Account and the procedures surrounding the creation of such an account. The Court notes that attached to plaintiffs' complaint is a form entitled "Passbook Savings Account Information" detailing the procedures and requirements for maintaining a Passbook Savings Account. In any event, plaintiffs' allegations concerning the lack of information to inmates are not contained in the complaint and will not be separately addressed by the Court.

mates for use in the Canteen[4] to purchase items such as soap and toothpaste.

The California Penal Code provides that any interest earned on funds placed in an ITA[5] is allocated to the Inmate Welfare Fund, whose funds are used to improve prison conditions in the State of California. Cal.Penal Code § 5008.

Plaintiffs argue that inmates are unconstitutionally forced to choose between earning interest via the Passbook Savings Account, which funds may not be used at the Canteen, and having access to the Canteen via their ITAs, which do not earn interest.[6] They assert that access to the Canteen is a necessity of prison life. Plaintiffs allege that the CDC's failure to pay interest on funds deposited by prisoners in an ITA constitutes a taking in violation of the Fifth Amendment on the part of the CDC and prison officials. Plaintiffs further allege that defendant James Gomez, the Director of the CDC, is personally liable for implementing the policy on prisoner bank accounts. Plaintiffs seek monetary and injunctive relief against each of these defendants.

Defendants have filed a motion to dismiss with prejudice for failure to state a claim.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987).

Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981).

## DISCUSSION

The Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The Fifth Amendment Takings Clause has been held to apply to the states through the due process clause of the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980). The Fifth and Fourteenth Amendment property and due process guarantees apply only to situations in which an individual is deprived of property in which there exists a constitutionally protected property interest. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Protected property interests are created by "existing rules or understandings that stem from an independent source, such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S.Ct. at 2709.

In order for plaintiffs to establish that they have a protected property interest in the interest income created by funds deposited in an ITA, they must show that they have a legitimate claim of entitlement through either California law or some other independent source to the interest income earned on funds in these accounts. *Id.*

 California law provides no such entitlement to interest earned on funds placed in a prison's ITA. California Penal Code § 5008 provides that the Director of Corrections shall deposit the interest or increment accruing on inmate trust funds in the Inmate Welfare Fund. There is no provision in the

---

**4.** The Canteen is the facility at the prison where inmates are able to purchase sundries.

**5.** At oral argument defendants represented that no interest is actually earned on the funds in Inmate Trust Accounts. However, whether interest is actually earned on these funds does not affect the constitutional analysis.

**6.** Since prisoners may maintain both types of accounts, this argument is factually, as well as legally, flawed.

California Penal Code allowing or requiring the Director of Corrections to pay interest earned from funds in an ITA to an inmate. Thus California law specifically does not create a protected property interest that can be vindicated by the Fifth and Fourteenth Amendments.

Plaintiffs cite *Tellis v. Godinez,* 5 F.3d 1314 (9th Cir.1993), for the proposition that prisoners have a constitutionally protected property right in interest income from an ITA. In *Tellis,* the Ninth Circuit held that a Nevada statute requiring that interest earned on prisoners' personal funds be credited to prisoners' accounts created a protected property interest in the interest income. *Id.* at 1317.

The facts of *Tellis* are wholly distinguishable from the facts of the instant case, because the state law in Nevada is quite different from the law in California. The decision in *Tellis* was based entirely on the language of Nevada Revised Statute § 209.241, which provides that "[t]he interest and income earned on the money in the fund, after deducting any applicable charges, *must be credited to the fund.*" The Ninth Circuit held that this language required the prison to credit the interest earned on this fund back to the fund and proscribed the prison from spending the interest or withdrawing the interest for other purposes. The Court found that the Nevada statute "create[d] a protected property interest in the interest and income" earned in the account. *Id.* at 1317.

Unlike the Nevada statute, Cal.Penal Code § 5008 does not mandate that interest earned on prisoner trust accounts be credited back to the individual prisoners account. To the contrary, Cal.Penal Code § 5008 specifically provides that such interest shall be deposited in the Inmate Welfare Fund. The California regulations at issue in this matter

are thus very different from the Nevada regulations in *Tellis.*[7] *Tellis* does not hold broadly that inmates always have a constitutionally protected right to interest earned in prisoner bank accounts; rather it holds that they have such a right if state law provides it to them. In California, it does not.

Several district courts have also ruled on this issue and have rejected the argument that prisoners have a constitutionally proctected property interest in interest income. *See, e.g., Coleman v. McGinnis,* 843 F.Supp. 320, 325 (E.D.Mich.1994) (no state statute provided prisoners with a protected property interest in interest earned on accounts; therefore failure to pay interest was not a taking); *Gray v. Lee,* 486 F.Supp. 41 (D.Md. 1980) (failure to pay interest on inmates' funds held in spending accounts not unconstitutional because inmates had an option of transferring funds to commercial interest-bearing accounts); *Smith v. Robinson,* 456 F.Supp. 449 (E.D.Pa.1978) (courts have yet to recognize a right to earn interest on funds received while incarcerated).[8]

■ Plaintiffs also contend that their entitlement to the interest generated by funds in an ITA springs from an independent source. Plaintiffs cite two cases, *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980), and *United States of America v. $277,000 U.S. Currency,* 69 F.3d 1491 (9th Cir.1995), in support of this proposition. However, the Court finds that these cases are distinguishable from the instant case and do not support the plaintiffs' assertion that they have a constitutionally protected property interest in the interest income earned from inmate trust accounts.

In *Beckwith,* the Supreme Court struck down as unconstitutional a Florida statute

---

7. *Tellis* said "[W]e must assume that the legislature would have expressly authorized [the prison's] expenditure of money earned on prisoners' personal funds if it intended to do so." *Id.* at 1317. The California Legislature did just that.

8. The Tenth Circuit in *Petrick v. Fields,* 1996 WL 699706 (10th Cir. Dec.6, 1996), confronted the same issue and held that a failure to pay interest was not a taking under the Fifth Amendment because neither Oklahoma law nor any other

independent source provided prisoners with a constitutionally protected property interest in the interest income earned on prisoner accounts. *Id.* at *2. The Tenth Circuit distinguished *Tellis* on the ground that the Nevada statute explicitly provided for the payment of interest to prisoners. *Petrick* at *2. However, *Petrick* is an unpublished decision and as such the Court cannot rely on it as binding authority. *See* 10th Cir. R. 36–3; 9th Cir. R. 36–3.

that allowed a Florida county to keep $100,-000 in interest earned on an interpleader fund deposited in the county court. In its decision, the Supreme Court emphasized that there was a Florida statute that provided for a separate fee to be paid to the county for holding the funds and thus there was insufficient justification for the county to take the interest on the interpleaded funds. The Court emphasized the narrowness of its holding:

> We hold that under the narrow circumstances of this case—where there is a separate and distinct state statute authorizing a clerk's fee ... where the deposited fund itself concededly is private; and where the deposit in the court's registry is required by state statute ... the interest earned on the interpleader fund while it was in the registry of the court was a taking violative of the Fifth and Fourteenth Amendments.

*Id.* at 164, 101 S.Ct. at 452–53. The facts of the instant case distinguish it from the holding in *Beckwith.* The narrow holding of that case cannot be expanded to create a constitutionally protected property interest in interest income that is not created by state statute.

*$277,000* is also distinguishable from the instant case. *$277,000* involved funds that were seized by the United States and were found later to be the lawful property of the owner. The Ninth Circuit recognized that the government had immunity from a civil damages suit but held that "it must disgorge benefits that it has actually and calculably received from an asset that it has been holding improperly." *Id.* at 1498. In this case there has been no seizure of the prisoners assets by the government and their funds have not been held improperly or illegally.

Thus, the Court finds that inmates in California do not have a protected property interest in the interest income earned on Inmate Trust Accounts and that they are not deprived of earning interest on their funds because they can elect to place their money in a Passbook Savings Account. Therefore, the Court concludes that plaintiffs have not

stated, and cannot state, a claim for violation of the Fifth Amendment Takings Clause.[9]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss for failure to state a claim without leave to amend.

IT IS SO ORDERED.

---

9. Because the Court grants defendants' motion on this ground, it does not reach the issues of exhaustion of administrative remedies, Eleventh Amendment immunity, or qualified immunity.