**Paul SCHNEIDER, et al., Plaintiffs,**

v.

**CALIFORNIA DEPARTMENT OF CORRECTIONS, et al., Defendants.**

**No. C 96–1739 SI.**

United States District Court,
N.D. California.

March 22, 2000.

Herman A.D. Franck, Franck & Associates, San Francisco, CA, Stephen T. Gargaro, Stephen T. Gargaro Law Offices, San Francisco, CA, Dan M. Himmelheber, San Mateo, CA, for Plaintiffs.

Allen R. Crown, California State Attorney General's Office, Sacramento, CA, Peter J. Siggins, Deputy Attorney General, Bruce M. Slavin, Deputy Attorney General, Morris Lenk, Bill Lockyer, Cal. Attorney General, San Francisco, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ILLSTON, District Judge.

On February 11, 2000, the Court heard argument on a motion for summary judgment by defendant C.A. Terhune, Director of the California Department of Corrections ("CDC") and a motion for preliminary injunction by plaintiffs. Having carefully considered the arguments of counsel and the papers submitted, the Court GRANTS defendant's motion for summary judgment and DENIES plaintiffs' motion for preliminary injunction.

## BACKGROUND

### 1. Procedural History

Plaintiffs are fifteen current and former California inmates who have brought a § 1983 action against defendants California Department of Corrections ("CDC"), James Gomez, former Director of the CDC, and C.A. Terhune, current Director of the CDC. Plaintiffs allege that defendants committed an unconstitutional taking and violated prisoners' equal protection rights by failing to pay interest on funds deposited by prisoners in Inmate Trust Accounts ("ITAs").

On March 24, 1997, this Court held that plaintiffs did not possess a property interest in the interest income earned on money placed in ITAs and dismissed plaintiffs' complaint without leave to amend. *See Schneider v. California Dept. of Corrections,* 957 F.Supp. 1145, 1149 (N.D.Cal. 1997). After this Court denied reconsideration of its ruling, plaintiffs appealed. On August 4, 1998, the Court of Appeals for the Ninth Circuit reversed and remanded, holding that plaintiffs possessed a constitutionally cognizable property right in the interest earned on funds deposited into the ITAs. Because such a property right triggered Fifth Amendment takings scrutiny, the Court ordered further discovery and proceedings regarding accrual of actual or constructive interest on ITA funds. *See Schneider v. California Dept. of Corrections,* 151 F.3d 1194, 1201 (9th Cir.1998).

On May 14, 1999, plaintiffs filed an amended complaint, alleging § 1983 damages resulting from defendants' alleged unconstitutional taking and violation of plaintiffs' equal protection rights. Plaintiffs also requested injunctive relief. On August 20, 1999, this Court dismissed defendants CDC and James Gomez from this action. *See Schneider v. California Dept. of Corrections,* No. 96–1739 SI (N.D.Cal. Aug. 20, 1999) (Order Granting Motion to Dismiss). Now before the Court is defendant Terhune's motion for summary judgment, and plaintiffs' motion for preliminary injunction.

### 2. Factual History

Plaintiffs are current and former state inmates of Pelican Bay State Prison, California. Correctional Institution, and the Central California Women's Facility. The inmates allege that defendant Terhune has violated the Fifth Amendment Takings Clause and the Fourteenth Amendment Equal Protection Clause by failing to pay

constructive interest on funds deposited by prisoners into ITAs, but offering interest to state parolees. *See* Compl. ¶¶ 30–31, 39–41.

For security reasons, state prisoners are not permitted to possess money while in prison. *See* 15 C.C.R. § 3006(b); Flores Decl. ¶ 3. Should prisoners wish to have access to funds while incarcerated,[1] inmates can choose to place their money in either an ITA, which does not earn interest to the prisoner, or in a Passbook Savings Account, which does earn interest.[2] *See* Flores Decl. ¶ 6; Response to Plffs' Second Set of Interrogatories, No. 1. Only those funds placed in an ITA are available to inmates for use in the prison Canteen[3] to purchase items such as soap and toothpaste. *See* Flores Decl. ¶ 6. The CDC does not charge the prisoners a fee for maintaining the ITAs. *See id.* ¶ 2.

The California Penal Code provides that, when specifically authorized on a separate written form by the inmate, the CDC may place ITA funds into an interest-bearing bank account. *See* Cal.Penal Code § 5008; Declaration of Counsel in Supp. of Mtn. for Prelim. Inj., Exh. E. Prior to October 1998, ITA funds that exceeded the estimated current needs of inmates were deposited into the Inmate Welfare Fund ("IWF"), a fund which is used to improve prison conditions and provide prisoner programs, such as movies and library materials. *See* Flores Decl. ¶¶ 7, 9. In turn, IWF funds in excess of the estimated needs of the IWF program were deposited into the State Treasury. *See* Flores Decl. ¶ 7. Any interest earned on these excess IWF funds was returned to the IWF account. *See id.*[4] However, as of October 1998, excess ITA funds are no longer transferred into the IWF account or the State Treasury. Rather, these funds remain in the individual inmates' non-interest-bearing ITAs.

Based upon a survey performed by R. Flores, Chief of the Inmate Welfare Fund and Trust Accounting Section of the CDC, defendant estimates that operating the current non-interest-bearing ITA system costs $1,1789,892 per year (or $7.84 per prisoner), no part of which is actually charged to the prisoners. *See* Flores Decl. ¶¶ 2, 11. The CDC further estimates that the annual interest earned on ITA funds would total $516, 116.28, or $3.43 per prisoner. *See id.* ¶ 12. In order to institute and maintain a system in which ITA funds earn interest and in which that interest is accounted for to each individual inmate, additional staffing, equipment, and office space costs may also be necessary. *See id.* ¶ 10. As such, interest-bearing ITA accounts would generate substantial, systemic net losses. *See id.* ¶ 13.

## LEGAL STANDARD

A motion for summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A party seeking summary judgment bears the initial burden of informing the

---

1. Inmates retain the option of placing their funds outside the California Department of Corrections system with family, friends, institutional trustees, etc.

2. The Passbook Savings Account program was implemented in response to the California Court of Appeal decision in *In re Parker*, 151 Cal.App.3d 583, 198 Cal.Rptr. 796 (1984). Because of a growing problem in the trafficking and use of narcotics and other contraband in prison, in 1981 California prison inmates were prohibited by regulation from establishing passbook savings accounts with outside banks, and were restricted to "long term investments" for their funds. The California court found that less restrictive alternatives were available to the prison authorities to afford protection against the narcotics and contraband threat, and this passbook savings program was developed as a result.

3. The Canteen is the facility at the prison where inmates are able to purchase sundries.

4. In the first six months of 1999, excess IWF funds earned interest at a rate of 5.134%.

court of the basis for its motion and of identifying those portions of the pleadings and discovery responses which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. However, on an issue for which the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Id.* If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, "*specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(e).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence and draws all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assn.,* 809 F.2d at 630–31. The evidence presented by the parties must be admissible. Fed.R.Civ.P. 56(e). Hearsay statements found in affidavits are inadmissible. *See, e.g., Fong v. American Airlines, Inc.,* 626 F.2d 759, 762–63 (9th Cir.1980). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. Niagara Falls,* 754 F.2d 49 (2d Cir.1985); *Thornhill Publishing Co., Inc. v. General Telephone & Electronics Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

## DISCUSSION

### 1. Fifth Amendment Takings Clause

Defendant asserts that the questions on remand are "whether there has been a 'taking,' whether there has been 'just compensation' and whether, if the interest were paid to the [plaintiffs], there would be any 'net interest.'" Dft's Mtn. for Summ.Judg., at 6. Defendant argues that, though ITA accounts do not currently bear interest, were these funds to be deposited into interest-earning accounts, the costs of administering those interest-bearing accounts would greatly exceed the amount of interest owed to individual plaintiffs. Therefore, if plaintiffs were to bear the economic consequences of such an interest-bearing system, the system would actually present a detriment, rather than a benefit, to plaintiffs. Furthermore, defendants contend, because plaintiffs have not been and are not now charged for the costs of administering the ITAs, they have received just compensation for any interest income not remitted to them.

Plaintiffs allege that defendant's failure to pay interest on funds deposited by prisoners in an ITA constitutes a taking in violation of the Fifth Amendment. Plaintiffs further counter that, as fiduciary and trustee of the ITA, Terhune has the duty to place the funds into interest bearing accounts. Therefore, these funds should be viewed as earning "constructive interest." *See* Mtn for Prelim.Inj., at 8. Plaintiffs assert that the "policy ... of placing inmates' funds into non-interest-bearing accounts" and not remitting "constructive interest" to plaintiffs is a violation of the Fifth Amendment. Compl. ¶ 19. Plaintiffs also argue that defendant's contention that the cost of operating such an interest-bearing ITA would exceed the interest owed is speculative, but plaintiffs provide no evidence or analysis that would produce a contrary result. Rather plaintiffs assert that the best evidence that an interest-bearing system would cause plaintiffs a net loss would be to actually operate an interest-bearing ITA system.

The Fifth Amendment provides that "private property [shall not] be taken

for public use, without just compensation." U.S. Const. amend. V. The Fifth Amendment Takings Clause has been held to apply to the states through the due process clause of the Fourteenth Amendment. *See Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980). However, "not every destruction or injury to property by governmental action has been held to be a 'taking' in the constitutional sense." *Armstrong v. United States*, 364 U.S. 40, 48, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). The Fifth and Fourteenth Amendment property and due process guarantees apply only to situations in which an individual is deprived of property in which there exists a constitutionally protected property interest. *See Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). It is undisputed that plaintiffs hold such a property interest both in the funds that they deposit into ITAs and in any interest income earned therefrom. *See Schneider*, 151 F.3d at 1201.

The Supreme Court has "eschewed the development of any set formula for identifying" a Fifth Amendment taking which is not a "per se" taking of property. *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 224, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). Instead, the Court has relied on a case-by-case, factual inquiry. *See id.* In making this assessment, the Court has identified three factors: (1) the economic impact on the plaintiff; (2) the extent of interference with plaintiff's investment-backed expectations; and (3) the character of the governmental action. *See id.* at 225, 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (*citing Penn. Central Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)).

## A. Economic Impact on Plaintiffs

Defendant asserts that the ITA system incurs annual operating expenses of over $1 million (or over $7.00 per inmate), costs which the CDC does not pass along to the plaintiffs in the form of charges or fees. *See* Flores Decl. ¶ 3, 11. Defendant further argues that the interest earned on ITA funds would represent a *de minimis* amount, averaging no more than $4.00 per prisoner. Therefore, defendant claims that any withheld interest income, real or constructive, can essentially be characterized as fees "for services rendered" by the CDC. *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 171, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) (quoting *Webb's Fabulous Pharmacies*, 449 U.S. at 157, 101 S.Ct. at 448–449). Plaintiffs counter that *Washington Legal Foundation, Webb's Fabulous Pharmacies*, and *Schneider* support their proposition that any use by the government of actual or constructively accrued interest constitutes a taking for public use without compensation.

Because interest does not actually accrue on the individual ITAs or on the IWF accounts, there is no "actual interest" used by the CDC. Although both *Washington Legal Foundation* and *Schneider* found property rights in the interest earned on the funds in question, neither Court decided the issue of whether the disputed use of funds constituted a taking in violation of the Fifth Amendment. *See Washington Legal Foundation*, 524 U.S. at 172, 118 S.Ct. 1925 (holding that the owner of the principal retained a property right in the interest earned from funds held in "IOLTA" accounts); *see also Schneider*, 151 F.3d at 1201 (holding that inmates maintain a property interest in any income earned on ITAs). Rather, the resolution of that issue was remanded to the district court.

Indeed, after a trial on the merits of the *Washington Legal Foundation* IOLTA case, the district court addressed the takings issue and held that plaintiffs' Fifth Amendment claim failed. *See Washington Legal Foundation v. Texas Equal Access to Justice Foundation*, 86 F.Supp.2d 624, 646–47 (W.D.Tex. 2000). Specifically, the Court found that the Interest on Lawyers' Trust Account ("IOLTA") program had no

economic impact on plaintiffs, because the type of funds which generated interest while in IOLTA accounts would be incapable of generating interest absent IOLTA. *See id.* at 646.

Theoretically, the funds at issue in this case differ from those at issue in *Texas Equal Access.* However, in practice, there is great similarity. Just as the cost of placing money in a non-IOLTA account "would subsume the interest earned," *id.,* the uncontradicted evidence in this case shows that the expense of administering an interest-bearing ITA system would dwarf the small quantity of interest generated, leaving nothing for distribution to individual prisoners. *See* Flores Decl. ¶ 11–13; *see also Texas Equal Access,* 86 F.Supp.2d at 640 (explaining that, though the cost of "operating an IOLTA account is zero," "in-firm pooling" produced $10 interest and generated $12 in fees). Moreover, here plaintiffs have the option of placing any money on which they wish to gain interest in a separate savings account. Therefore, *Phillips* and its related authorities do nothing to strengthen plaintiffs' argument.

The *Webb's Fabulous Pharmacies* case, cited by the Supreme Court in *Washington Legal Foundation,* did rule on the constitutionality of the issue before it, but the facts of that case are not particularly relevant to the claims here. In *Webb's,* nearly $2 million in interpled funds was remitted to the county clerk. *See Webb's Fabulous Pharmacies,* 449 U.S. at 166, 101 S.Ct. 446, 66 L.Ed.2d 358. After deducting $9,228.74 in fees, the clerk deposited the remaining funds into an interest-bearing account. *See id.* Upon resolution of the dispute, the clerk retained the more than $100,000 in interest earned on the deposited funds. *See id.* The Court held that, because "interest ... follows the principal" and because a service fee of $9,228.74 had already been deducted by the clerk, withholding the interest earned on the interpleader funds amounted to a taking in violation of the Fifth and Four-

teenth Amendments. *Id.* at 162, 164, 101 S.Ct. 446. However, the Court took no position "as to the constitutionality of a statute that prescribes ... retention of interest earned, where the interest would be the only return ... for services ... rendered." *Id.* at 164, 101 S.Ct. 446; *see also Washington Legal Foundation,* 524 U.S. at 169, 118 S.Ct. 1925 (stating that the Court's "holding does not prohibit a State from imposing reasonable fees" on costs it "incurs in generating and allocating interest income"). Accordingly, *Webb's* appears to offer more aid to the defendant's argument than to plaintiffs.

Finally, *Washlefske v. Winston,* 60 F.Supp.2d 534 (E.D.Va.1999), the case most similar to the present circumstances, weighs against plaintiffs' argument. In *Washlefske,* plaintiffs argued that the Virginia Department of Corrections' ("VDOC") failure to pay to inmates interest earned on their individual interest-bearing checking accounts constituted a taking for public use without just compensation. The VDOC placed the interest earned on the inmates' interest-bearing checking accounts and on the excess inmate funds into the "local Commissary Account," which provides programs similar to California's Inmate Welfare Fund. The court found that, because (1) the local Commissary Account funds were used for the benefit of inmates, rather than for third-parties, (2) plaintiffs had other options for investing their funds but chose to use the inmate trust fund accounts, (3) the VDOC administered the accounts without charge to the inmates, and (4) plaintiffs receive a greater benefit from the pooling of the Commissary Account funds than they would from individual interest payments, the VDOC's failure to remit interest to the plaintiffs did not constitute a taking in violation of the Fifth Amendment. *Washlefske,* 60 F.Supp.2d at 541–43.

▆ Defendant asserts that, because security concerns prohibit the use of cash within the prison, the CDC's ITA ac-

counting system provides plaintiffs with a valuable service at no charge to them. Plaintiffs have not presented evidence countering or challenging defendant's cost estimates or showing that the cost to defendants in accounting for the funds in each inmates' ITA is not substantial, or that the offering of this service is not useful and valuable to plaintiffs. Plaintiffs have further not offered evidence that plaintiffs' present inability to earn interest on ITAs is not justly compensated by plaintiffs' access to the ITA accounting system.

Moreover, it appears that the economic impact of depositing funds into ITAs is small. The evidence shows that many prisoners would receive a minuscule amount of income from an interest-bearing account.[5] Should the state organize a system in which ITAs earn interest, the defendant's declaration provides estimates suggesting that the systemic costs would substantially exceed the total interest generated. *See* Flores Decl. ¶ 11–13. If the prisoners were to bear the cost of the operation of an interest-bearing accounting system, defendant's declaration suggest that their economic interests would be harmed rather than improved.[6] *See Texas Equal Access*, 86 F.Supp.2d at 646 (finding that the costs of administering money placed in interest-bearing non-IOLTA accounts "would subsume the interest earned").

Plaintiffs argue that defendant's calculations are speculative and unreliable, but plaintiffs provide no analysis or estimate of their own. Plaintiffs complain that in April 1999, defendant stated that some of the information now set forth in defendant's supporting declaration was not available.[7] However, in the over three months which elapsed between the filing of the Flores declaration and the hearing on the summary judgment motion, plaintiffs made no attempt to depose Mr. Flores or to obtain or examine any new information which may have been used in forming the his estimate of operating costs and potential interest accruals.[8]

Finally, on February 14, 2000, the week after oral. argument, plaintiffs' moved this Court for a 60–day extension of time to allow plaintiffs to submit documentation regarding the Oregon State Department of Corrections, which "pays inmates interest on inmate trust accounts." Plffs' *Ex Parte* Application, at 2.[9] Thereafter, on February 22, 2000, plaintiffs submitted a request for judicial notice of Oregon Administrative Regulations, OAR §§ 291–158 through

---

5. In fact, many inmates do not open ITAs and other ITAs regularly carry a zero balance. *See* Flores Decl. ¶ 2.

6. Declarant Flores acknowledges that the "estimates are very rough and would need to be refined in order to be actually used." Flores Decl. ¶ 13. However, Flores declared that he could "make the following generalizations: (1) the costs of operating the ITA system clearly exceed the amount of interest which individual prisoners would receive if interest were paid to the individual prisoners; (2) the costs of operating the ITA system clearly exceed the amount of interest which is earned on the ITA funds; (3) if individual prisoners were charged the 'average' costs of operating the ITA system, prisoners who received the 'average' amount of interest earned on ITA accounts would be worse off than under the current system; (4) any prisoner who wishes to earn interest on his or her funds which are not in an ITA may do so." Flores Decl. ¶ 13

7. Plaintiff attaches interrogatories and document request in which defendant responds to questions concerning the "total operating cost of the ITA deposit system" by stating that defendant "does not have documents which show the 'total operational costs of administering the ITA deposit system.'" Response to Plff's Second Set of Interrogatories, at 3–4, attached as Exh. B to Declaration of Counsel in Supp. of Mtn. For Prelim.Inj. Plaintiffs apparently never pursued the inquiry further (i.e, with more specific interrogatories or a motion to compel further information about deposits).

8. At oral argument, plaintiffs' counsel indicated that he had no plans to request further depositions.

9. Plaintiffs' *Ex Parte* Application for Extension of Time to Permit Submission of Further Evidence is hereby GRANTED.

291–158–075. Section 291–158–0035 states that "[i]nterest on all inmate accounts which accrues from investments made by the State Treasurer will be credited monthly to each inmate's trust account." Request for Judicial Notice, at 2 Monthly trust statements are provided to each inmate, and additional copies are available for $1 per statement. OAR 291–158–0015(3), attached to Request for Judicial Notice.

Plaintiffs, however, have not submitted evidence regarding the cost incurred by the Oregon State Department of Corrections in administering its system. Plaintiffs state that they have learned from Ms. Jay Sebastian, Fiscal Services Manager and Manager of the Oregon Inmate Trust Account Program, that the Oregon Department of Corrections does not have a record of the administrative expenses incurred in operating its ITA program. *See* Request for Judicial Notice, at 2. Moreover, plaintiffs apparently have no intention of either deposing Ms. Sebastian or conducting further investigations regarding the cost of Oregon's program. *See id.* However, absent some estimate of the costs and benefits of the Oregon system, the bare fact that Oregon administers such a program is inadequate to counter or disprove defendant's estimates regarding the costs specific to California's ITA system.

Defendant has set forth "rough" estimated costs and benefits analysis of an interest-bearing system. Plaintiffs have not responded with evidence which would show that these estimates are false, or that the lack of interest income operates to prisoners' overall economic detriment. Therefore, plaintiffs have failed to raise a genuine issue of material fact sufficient to survive summary judgment.

## B. Plaintiffs' Investment–Backed Expectations

This factor in the takings analysis is most commonly used in disputes regarding real property. *See Penn. Central Transp.*

*Co. v. City of New York,* 438 U.S. at 107, 98 S.Ct. at 2650 (deciding whether the application of municipal zoning ordinances to individual buildings for the purpose of preserving historic landmarks could effect "taking" which would require the payment of "just compensation"). Therefore, this factor is not as readily applicable to an analysis of purely monetary interests. However, the Supreme Court has reviewed investment-backed expectations in the context of monetary interests. *See Connolly,* 475 U.S. at 227, 106 S.Ct. at 1027 (finding that the retroactive application of withdrawal liability provisions to operating pension plans did not upset the investment-backed interests of employers who voluntarily participated in ERISA-regulated plans); *see also Texas Equal Access,* 86 F.Supp.2d at 643–44.

The defendant argues that, because interest-earning Passbook Savings Accounts are available to plaintiffs, no "taking" of interest has occurred. Plaintiffs counter that inmates are unconstitutionally forced to choose between earning interest via the Passbook Savings Account, which funds may not be used at the Canteen, and having access to the Canteen via their ITAs, which do not earn interest. They assert that access to the Canteen is a necessity of prison life.

Should plaintiffs wish to earn interest on their deposits, plaintiffs may invest funds in interest-bearing Passbook Savings Accounts. *See* Flores Decl. ¶ 4. Moreover, it appears that access to the Canteen is not absolutely necessary, because, in fact, some inmates choose not to utilize the ITAs, while others who do open ITAs carry a zero balance. *See* Flores Decl. ¶ 2. Plaintiffs have failed to submit evidence that they were not allowed access to passbook savings accounts, or that they were not permitted to keep accounts outside the jail with friends or family, or that they were not informed that they could do so. *See, e.g.,* Leyva Decl., attached as Exh. E to Declaration of Counsel in Supp. of Prelim.Inj. (stating that she agreed to set up

an ITA account because otherwise, she "could not get food items [from] the prison store"). Plaintiffs also have not stated that they expected to earn interest on the money deposited in their ITAs.

Additionally, as noted above, the uncontradicted evidence shows that plaintiffs would receive very little interest on their ITA deposits and that the costs of administering such a system, if charged back to the inmates, would more than consume the interest earned. Accordingly, any investment expectations plaintiffs may have would not be met by the institution of an interest-bearing ITA system. Therefore, plaintiffs have not proffered evidence sufficient to raise a triable issue of fact which could defeat summary judgment.

### C. Character and Benefit of the Governmental Action

Though the plaintiffs do not argue this point, their claim of an unconstitutional taking implies the argument that plaintiffs have been singled out to bear the burden of providing funding for the IWF program. However, in light of the uncontradicted evidence that any interest earned by plaintiffs would be swallowed by fees, the Court finds that plaintiffs "are in fact bearing no burden at all." *Texas Equal Access,* 86 F.Supp.2d at 646 (finding that, because plaintiffs funds could not generate interest without IOLTA, the "program costs Plaintiffs nothing").

■ It should be noted that at of October 1998, in apparent response to the takings claims made in this lawsuit, defendant ceased transferring the excess ITA funds in order to generate interest for the IWF program. When that program was in effect, however, the pooling of interest earned in the IWF offered plaintiffs benefits that each individual prisoner's interest—were it distributed—would not be able to provide. *See* Flores Decl. ¶¶ 7, 9 (stating the IWF funds are used to improve prison conditions and to provide library and visiting materials). More importantly, IWF offers these benefits to the prisoners themselves rather than transferring the benefits to a population outside of the prison. *See Washlefske,* 60 F.Supp.2d at 541–43 (noting that the VDOC-administered accounts provided greater benefit to prisoners than they would receive from their individual interest payments); *compare Texas Equal Access,* 86 F.Supp.2d at 646–47 (upholding the constitutionality of IOLTA, which transfers a paying client's interest benefit to the Texas Equal Access to Justice Foundation in order to provide legal services to poor);. Therefore, the Court concludes that application of the interest earned on excess ITA funds to the use of the Inmate Welfare Fund provided plaintiffs with a benefit rather than an unwarranted burden.

### 2. Qualified Immunity

Terhune argues that he is entitled to qualified immunity from damages because it was unclear whether plaintiffs had a constitutional right to have ITA funds placed in interest bearing accounts. Plaintiffs respond that the Constitution's prohibition against governmental taking without just compensation has been clearly established for centuries, and that, as a trustee, Terhune has a fiduciary duty to assure that funds in his care are invested productively. Therefore, plaintiffs argue, their due process right to trust account interest was well-established at all relevant times.

■ The defense of qualified immunity protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The rule of qualified immunity " 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.' " *Burns v. Reed,* 500 U.S. 478, 494–95, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271

(1986)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir.1991). The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. *See Maraziti v. First Interstate Bank,* 953 F.2d 520, 523 (9th Cir.1992). If the plaintiff meets this burden, then the defendant bears the burden of establishing that his actions were reasonable, even if he violated the plaintiff's constitutional rights. *Doe v. Petaluma City Sch. Dist.,* 54 F.3d 1447, 1450 (9th Cir.1995); *Neely v. Feinstein,* 50 F.3d 1502, 1509 (9th Cir.1995); *Maraziti,* 953 F.2d at 523.

In a similar action, *Washlefske v. Winston,* 60 F.Supp.2d 534 (E.D.Va. 1999), the court was presented with the comparable issue of whether funds from prisoners' individual accounts and funds in excess of the inmates' day-to-day expenses could be pooled and the interest used to acquire items such as prison library materials and exercise equipment. *See id.* at 534. In that case, pursuant to *Phillips,* the court found that the plaintiffs did in fact have a property interest in the interest earned on their trust accounts. However, the *Washlefske* court held that because use of the "minuscule amount of interest earned" coupled with the facts that the Virginia Department of Corrections both did not charge a fee for administering the accounts and used the total interest for the benefit of the inmates as a whole (rather than for the advantage of a "third-party beneficiary"), there was not a taking in violation of the Fifth and Fourteenth Amendments. *See* 60 F.Supp.2d at 541–43.

■ Plaintiffs have not directed the Court's attention to any other cases which hold that it is unconstitutional for the state department of corrections to withhold *de minimis* interest accruals in lieu of charging an administrative service fee or to pool minimal interest accruals to provide funds for the collective benefit of inmates. Therefore, the Court concludes that defendant Terhune could have reasonably believed that failure to account for any interest accrued on funds from ITAs did not violate a clearly established constitutional right. Accordingly, the Court finds that defendant is entitled to qualified immunity from damages in the present suit.

**3. Equal Protection Violation**

Plaintiffs allege that state parolees are offered ITA accounts which earn interest, while inmates are denied interest payments. This difference in treatment between inmates and parolees, plaintiffs assert, constitutes an equal protection violation. Defendant argues that plaintiffs have neither presented evidence that the state maintains ITA for parolees, nor met their burden of showing an equal protection violation.

■ To establish an equal protection violation, plaintiffs must show that the alleged actions taken by the state (1) had a disparate impact on a suspect class and (2) was motivated by discriminatory intent. *See Washington v. Davis,* 426 U.S. 229, 238–239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

■ Plaintiffs' complaint contends that the state "gives parolees interest on any accounts in the Inmate Trust Account, but not to time-serving inmates." Compl. ¶ 40. However, plaintiffs have not proffered evidence to the Court either that parolees are provided with ITAs that earn interest or that ITAs are maintained for parolees at all. Accordingly, the Court concludes that there exists no genuine dispute of material fact and GRANTS summary judgment for the defendant.

**4. Preliminary Injunction**

■ The Court has the authority to grant a preliminary injunction in the exer-

 

cise of its equitable powers. *See* Fed. R.Civ.P. 65. As the Court is acting in equity, the decision to enter a preliminary injunction is largely left to its discretion. *See Big Country Foods, Inc. v. Board of Educ. of Anchorage School Dist.*, 868 F.2d 1085, 1087 (9th Cir.1989). Traditionally, this rule has been interpreted to require the trial court to consider the likelihood that plaintiff will prevail on the merits *and* the possible harm to the parties from granting or denying the injunctive relief. *See Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir.1987); *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir.1984).

 At the extremes, the party seeking injunctive relief must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, *or* (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *See Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1448 (9th Cir.1988); *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987). "These are not two distinct tests, but rather the opposite ends of a single 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'" *Miss World*, 856 F.2d at 1448 (quoting *Rodeo Collection*, 812 F.2d at 1217). However, in any situation, the Court must find that there is some threat of an immediate irreparable injury, even if that injury is not of great magnitude. *Big Country*, 868 F.2d at 1088 (citations omitted); *Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir.1985) (citations omitted).

In light of the Court's disposition on *defendant's motion for summary judgment*, the Court concludes that plaintiffs have not met their burden of showing a probability of success on the merits. Nor have plaintiffs presented any evidence of the possibility of irreparable harm or that the balance of hardships tips in plaintiffs favor.

Accordingly, plaintiffs' motion for preliminary injunction is DENIED.

### CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment and DENIES plaintiffs' motion for preliminary injunction.

**IT IS SO ORDERED.**