345 F.3d 716
 Paul J. SCHNEIDER; Todd L. Ashker; Brian D. Healy; Steve Olivares; Dwayne McElwee; Earl B. Wilson; Ricardo Leyva; Anthony L. Likai; Daniel Demarco; Thomas C. Kleve; Michael R. Hanline; Katherine Cladwell; Theresa Fredericks; Rick Terflinger; David Shore, Plaintiffs-Appellants,
v.
CALIFORNIA DEPARTMENT OF CORRECTIONS; G.B. Garibay; William Duncan; James Gomez, Dir Dept of Corr; C.A. Terhune, Director of the DOC, Defendants-Appellees.
 No. 00-15795.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 20, 2001 — San Francisco, California.
 Submission Deferred March 29, 2001.
 Resubmitted September 29, 2003.
 Filed September 29, 2003.
 
 COPYRIGHT MATERIAL OMITTED Allen R. Crown, Acting Senior Assistant Attorney General, San Francisco, California, argued the cause for the appellees; Bill Lockyer, David P. Druliner, Robert R. Anderson, Paul D. Gifford, Rochelle C. Holzmann, and James M. Humes, San Francisco, California, were on the briefs.
 Herman Franck, San Francisco, California, argued the cause for the appellants; Stephen T. Gargaro was on the briefs.
 Appeal from the United States District Court for the Northern District of California; Susan Yvonne Illston, District Judge, Presiding. D.C. Nos. CV-96-01739-SI, CV-99-02039-SI.
 Before JOSEPH T. SNEED, HARLINGTON WOOD, JR.,* and DIARMUID F. O'SCANNLAIN, Circuit Judges.
 OPINION
 O'SCANNLAIN, Circuit Judge.
 
 
 1
 We must decide whether a State committed an unconstitutional taking by failing to pay interest on funds deposited in prison inmate trust accounts.
 
 
 2
 * Paul J. Schneider and the other Plaintiffs-Appellants are current and former state inmates of the California penitentiary system. For security reasons, inmates are not permitted under California law to possess money while in prison. See 15 C.C.R. § 3006(b). Accordingly, the California Department of Corrections ("CDC") has established two separate types of trust accounts into which personal funds may be placed during incarceration. One, an Inmate Passbook Savings Account, is administered by Bank of America, and pays interest to the inmate on the principal balance. A second, an Inmate Trust Account ("ITA") does not pay interest. Each prisoner has the option of authorizing the CDC to establish and to maintain an ITA on his behalf, but he is not required to do so. See 15 C.C.R. § 3075.1(d)(3) ("CDC Form 345").
 
 
 3
 Notwithstanding that the inmate is not credited with interest earned on his account, there are compelling reasons to establish an ITA. First, in order to qualify for an interest-bearing account, an inmate is required to maintain an ITA with a principal balance of at least $25.00. Second, and more significantly, only those funds placed into an ITA are available to the inmate for purchases in the prison canteen, such as for soap and toothpaste. CDC Form 345, which the inmate must sign in order to set up an ITA, provides: "I authorize the [CDC] to maintain a trust fund account in my name, thus enabling me to make purchases from the canteen.... I also understand that if I do not complete and sign this form, my canteen privileges will be lost." Id. While the inmate does not receive it, interest was indeed generated on ITAs during the relevant period. The California Penal Code specifically provides that any such interest earned on inmate funds placed in ITAs shall be allocated, not to the inmates themselves, but rather to the Inmate Welfare Fund ("IWF"). See Cal.Penal Code § 5008. In fact, in signing CDC Form 345, the prisoner specifically states: "I ... authorize any interest earned on monies held for me in such trust shall be deposited into the Inmate Welfare Fund." Id. According to California law, funds placed in the Inmate Welfare Fund "shall be used for the benefit, education, and welfare of inmates of [CDC] prisons and institutions ..., including but not limited to the establishment, maintenance, employment of personnel for, and purchase of items for sale to inmates at canteens..., and for the establishment, maintenance, employment of personnel and necessary expenses in connection with the operation of the hobby shops at [CDC] institutions." Cal.Penal Code § 5006.
 
 
 4
 Inmates filed this suit in federal district court pursuant to 42 U.S.C. § 1983, alleging that the CDC's policy of not paying ITA interest to prisoners constitutes a taking of private property for public purposes in violation of the Fifth and Fourteenth Amendments. Schneider v. California Dep't of Corrections, 957 F.Supp. 1145 (N.D.Cal.1997) ("Schneider I"). The district court rejected the inmates' contention, and dismissed their suit without leave to amend. We reversed and remanded, holding that the inmates possessed a constitutional cognizable property right that triggers Takings Clause scrutiny in any interest earned. Schneider v. California Dep't of Corrections, 151 F.3d 1194 (9th Cir.1998) ("Schneider II"). The remand was accompanied by instructions that the district court permit discovery to determine whether or not interest actually accrues on the prisoners' ITA funds. We further instructed that if interest does accrue or that the prisoners are entitled to "constructive interest," then the district court shall allow the inmates to amend their complaint.
 
 
 5
 On remand, the inmates filed an amended complaint seeking 42 U.S.C. § 1983 damages resulting from the alleged unconstitutional taking as well as injunctive relief. On August 20, 1999, the district court issued an order dismissing defendants CDC and James Gomez, the then director of the CDC, on the basis of qualified immunity. On November 5, 1999, defendant C.A. Terhune, current director of CDC, filed a motion for summary judgment. In support of the motion was a declaration of R. Flores, Chief of the Inmate Welfare Fund and Trust Accounting Section, estimating the average costs incurred and gross interest earned on ITA funds. In opposition, the inmates filed objections to the Flores declaration alleging that certain statements were inconsistent with previous interrogatory responses, were hearsay, and contained improper non-expert opinion and improper lay opinion. The inmates also filed a motion for preliminary injunction. On March 22, 2000, the district court issued its order granting Terhune's motion for summary judgment and denying the inmates' motion for preliminary injunction. Schneider v. California Dep't of Corrections, 91 F.Supp.2d 1316 (N.D.Cal.2000) ("Schneider III"). The court concluded that the inmates had failed to demonstrate that there was a genuine issue of material fact because they failed to present any evidence that rebutted the CDC's cost estimates.
 
 II
 
 6
 In this fourth round of litigation, we are once again confronted with the inmates' constitutional challenge to the CDC's withholding of interest on their ITA funds. The Fifth Amendment provides that "private property [shall not] be taken for public use without just compensation." U.S. Const. Amend. V. Of course, in order to state a claim under the Takings Clause, a plaintiff must establish that he possesses a constitutionally protected property interest. We have previously held that the inmates' claim squarely meets this requirement, "interest income of the sort at issue here is sufficiently fundamental that States may not appropriate it without implicating the Takings Clause." Schneider II, 151 F.3d at 1201.
 
 
 7
 In Brown v. Legal Found. of Wash., ___ U.S. ___, ___, 123 S.Ct. 1406, 1421, 155 L.Ed.2d 376 (2003), the Supreme Court further clarified that per se takings analysis was the proper framework with which to evaluate "[a] law [requiring] that the interest on [an individual's] funds be transferred to a different owner for a legitimate public use." Here, it is conceded by CDC that until just recently the interest earned on the ITAs was deposited into the Inmate Welfare Fund for the benefit of the entire prison population. Therefore, it is clear under per se analysis that California's scheme perpetrates a taking because it appropriates the interest earned by the ITAs and allocates them for a public use.
 
 
 8
 Of course, "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." Brown v. Legal Found. of Wash., ___ U.S. ___, ___, 123 S.Ct. 1406, 1419, 155 L.Ed.2d 376 (2003) (citation omitted). Here, the district court determined that the inmates' takings claims were without merit because of estimates submitted by CDC that the costs of operating the ITAs were $1,178,892 per year (or $7.84 per prisoner), and that the annual interest earned totaled $516,116.28 (or $3.43 per prisoner). Schneider III, 91 F.Supp.2d at 1319. Indeed, the court found that "the uncontradicted evidence in this case shows that the expense of administering an interest-bearing ITA system would dwarf the small quantity of interest generated, leaving nothing for distribution to individual prisoners." Id. at 1322.
 
 
 9
 Notwithstanding the district court's reliance on these average cost estimates, there remains the fundamental question for takings purposes of whether an individual inmate was deprived of any net interest. In McIntyre v. Bayer, 339 F.3d 1097 (9th Cir.2003), we were confronted with the identical issue, namely "whether a state statute, requiring interest generated by inmate trust accounts to be retained by prison authorities and expended for the benefit of the prison population as a whole, effects an unconstitutional taking." Indeed, in McIntyre, like here, the evidence demonstrated that "[i]n the aggregate ... the prisoners' property fund generates no net gain at all, but rather a substantial loss." 339 F.3d at 1097 (emphasis in original).
 
 
 10
 Because McIntyre is squarely on point and controlling in our analysis, we quote extensively from its holding:
 
 
 11
 What is not clear on the record before us, however, is whether the interest earned by [the inmate's] principal is exceeded by his share of the costs of administering the prisoners' personal property fund. This information, however, is precisely what we need to know in order to determine whether the director has taken [the inmate's] interest without just compensation. For, as the Supreme Court noted in Brown, "[i]t may be that the difference between what a pooled fund earns, and what the individual clients... lose, adds up to enough to [generate interest] while not depriving any of the clients ... of just compensation." That is to say, it may well be that the costs of administering the prisoners' property fund are so high — and the interest earned on [the individual inmate's] account so low — that there is no net loss and therefore no compensation owed. The district court, looking at the aggregate amounts spent on running the fund and at the aggregate amount of interest generated, rightly concluded that there was a net loss in the prisoners' property fund as a whole.
 
 
 12
 While perhaps understandable, the district court's inference that, because the fund as a whole operated at a net loss, [the inmate] himself could not have suffered a taking without compensation, cannot be squared with the per se analysis that, as the Supreme Court has made clear, remains applicable to cases (such as this one) involving the state's appropriation of interest income.[1] Because it is clear that [the state statute] does effect a taking of inmate interest, and because, on this record, we cannot determine whether there is any just compensation owed to [the inmate], the issue of compensation remains "a practical question... undeveloped on this record." We therefore vacate the district court's grant of summary judgment ... and remand for further proceedings not inconsistent with this opinion.
 
 
 13
 339 F.3d at 1097 (citations and internal quotation marks omitted).
 
 
 14
 Likewise, the district court here failed to engage in the individualized analysis that is required in light of the Supreme Court's holding in Brown. As in McIntyre, the aggregate gross interest and cost figures seem to indicate that the ITA funds as a whole do not generate any net interest. For takings purposes, however, the relevant inquiry is not the overall effect on fund administration but whether any of the individual inmates themselves have been deprived of their accrued net interest. The government is not absolved of its constitutional duty to pay "just compensation" to an individual whose property has been taken for public use merely because the same government has benevolently conferred value on another affected property owner. Indeed, even if the total costs of operating a pooled fund outweigh the total interest generated, individual account holders in that fund are not precluded, on a proper showing, from enjoyment of their constitutionally protected property rights.[2]
 
 III
 
 15
 Because we conclude that further factual development is needed to determine whether California's failure to pay interest to individual inmates on their ITA funds violates the Takings Clause, the district court's grant of summary judgment and denial of injunctive relief is
 
 
 16
 VACATED and REMANDED for further proceedings consistent with this opinion.[3]
 
 
 
 Notes:
 
 
 *
 The Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 [1]
 InBrown, the Court noted `[s]everal hypothetical cases' in the IOLTA context in which further factual development might reveal a net loss deserving of just compensation:
 Suppose $2,000 is deposited into a lawyer's trust account paying 5% and stays there for two days. It earns about $.55, probably well under the cost of a stamp and envelope, along with clerical expenses, needed to send the $.55 to the client. In that case, the client's financial loss from the taking, if a reasonable charge is made for the administrative expense, is nothing. The fair market value of the right to receive $.55 by spending perhaps $5.00 to receive it would be nothing. On the other hand, suppose, hypothetically, that the amount deposited into the trust account is $30,000, and it stays there for 6 days. The client's loss here would be about $29.59 if he does not get the interest, which may well exceed the reasonable administrative expense of paying it to him out of a common fund. It is hard to see how just compensation could be zero in this hypothetical taking, even though it would be in the $2,000 for 2 days hypothetical taking.
 
 
 [2]
 As to defendants Terhune and Gomez, we must still address whether the district court was correct in granting them qualified immunity from the inmates' claims for damages
 We must answer two questions when deciding whether the prison officials are entitled to qualified immunity: "(1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official have believed his conduct was lawful?" Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050 (9th Cir.2002). To determine whether the law is clearly established, we cannot look at general principles of law, but must undertake our inquiry "in light of the specific context of the case." Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "The relevant dispositive inquiry ... is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Id. at 202, 121 S.Ct. 2151. "If the law did not put the [officials] on notice that [their] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id.
 It is quite obvious that the constitutionality of withholding interest on pooled financial accounts has been in a state of flux until just recently. Only until the Court's holding in Brown and our further pronouncement in McIntyre did it become clear that a per se takings analysis was appropriate and that an individualized assessment of net interest and just compensation were required. Prior to these holdings, Terhune and Gomez could have reasonably believed that failure to account for any interest accrued to individual inmate accounts from ITAs did not violate a clearly established constitutional right. Terhune and Gomez are thus entitled to qualified immunity from any damages in the present suit.
 
 
 [3]
 We were informed at oral argument that California stopped making deposits of ITA funds to the interest-bearing State centralized treasury system as a direct result of our decision inSchneider II. Curiously, California appears concerned that it would actually have to compensate individual prisoners for their net accrued interest and sought to forestall such calamity by eliminating deposits of ITA funds to the State treasury system altogether. Indeed, the State concedes that "[i]f there were no requirement to pay interest in ITA funds to individual prisoners, the CDC would resume the practice of depositing excess ITA funds into the IWF in order to earn interest for the IWF." Brief for Appellee at 11. We reserve comment on the propriety of California's precipitous action until the district court has had the opportunity on remand to conduct further proceedings in accord with our holding today.